**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

SHARON HOLL,                                    Case No. 1:09-cv-618

       Plaintiff,                              Weber, J.
                                                Bowman, M.J.

 v.

JOHN E. POTTER, Postmaster General,
United States Postal Service,

       Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff, through counsel, initiated this action by filing a complaint on August 24, 2009 against her employer, the United States Postal Service, alleging employment discrimination and retaliatory conduct. Defendant has filed a motion for summary judgment (Doc. 16), as well as proposed findings of fact and conclusions of law (Doc. 17). Plaintiff has filed a response to Defendant's motion (Doc.22),[1] to which Defendant has filed a reply (Doc. 25). Defendant's motion has been referred to the undersigned for initial consideration and a report and recommendation. 28 U.S.C. §636(b)(1)(B). For the reasons set forth herein, I now recommend that the Defendant's motion for summary judgment be granted.

**I. Background**

The instant case presents few factual disputes. To the extent that disputes exist,

---

[1] In contravention of this Court's order, *see* Doc. 9 at 5, Plaintiff also filed her own proposed findings of fact (Doc. 23).

the Court has interpreted the facts in favor of the Plaintiff as the non-moving party.

## A.  Relevant Facts

For many years, Plaintiff Holl has worked a night shift as a Mail Handler for the Cincinnati Postal Service's Processing and Distribution Center.   Due to a 2005 on-the-job injury, Plaintiff has work restrictions.  As of March 28, 2007, Plaintiff's restrictions precluded her from lifting or carrying more than 15 pounds, from pushing or pulling more than 35 pounds, and from twisting or reaching above her shoulders. In addition, Plaintiff was advised to minimize any bending or stooping.  In light of her restrictions, Plaintiff was and remains on a permanent limited duty assignment.  (*See* Doc. 16-2 at 3).  In 2007, her duties included standing and "prepping" mail by moving it from a conveyor belt onto a platform for processing on a machine.

This case revolves around four interactions in 2007 and 2008 that Plaintiff had with two key individuals, as well as a denial of a request for FMLA leave.  The two individuals with whom Plaintiff experienced conflicts are a supervisor named Juan Zamudio, and a co-worker named John Holscher.  For the Court's convenience, the interactions and incidents on which Plaintiff's claims are based are numbered and described chronologically.

## 1.  The March 2007 House Truck Incident (Zamudio)

On March 31, 2007, as Plaintiff was ending her shift, the Manager of Distribution Operations ("MDO"), Juan Zamudio, approached Plaintiff and several other workers. (Doc. 22-1, Plaintiff's Deposition at 24-28[2]). The MDO directed the employees to push three "house trucks" to another machine approximately 100 yards away.  (*Id*.).

_____

[2]Deposition page references are to the deposition itself, rather than to the pagination of the electronic record.

House trucks are described as flat-bedded vehicles on wheels, used to move large quantities of mail.  (*Id.* at 24).  The other employees moved two of the three trucks, but Plaintiff explained that she could not move the truck because it would be against her medical restrictions.  Although there is no evidence concerning the actual force required to push such a device, the Court accepts for purposes of the pending motion for summary judgment that the force required exceeded Plaintiff's medical limitations.

Even though Plaintiff advised MDO Zamudio of the conflict, he reiterated his request that she move the last house truck.  Plaintiff interpreted his repeated request as a direct order, (*see id.* at 26-27), although Mr. Zamudio disputes that characterization and testified that he ultimately asked someone else to move the truck.  Nevertheless, Plaintiff moved the truck, alleging pain and injury as a result.  Some weeks later, on May 12, 2007, Plaintiff complained about the incident to an EEO counselor; she filed a formal EEO complaint on August 23, 2007.  (Doc. 16-2).

### 2.  The September 2007 Bumping Incident (Holscher)

On September 3, 2007, Plaintiff was standing in an aisle speaking to her immediate supervisor, Kathleen Milner.  (Doc. 16-1, Plaintiff's deposition at 39-45).  As Plaintiff raised her arms to remove a headset she was wearing in order to better hear Ms. Milner, another employee, John Holscher, passed behind Plaintiff, bumping into Plaintiff's upraised elbow as he did so.  Mr. Holscher did not apologize for the incident, and as he returned back down the aisle, Plaintiff blocked his path.  (Doc. 16-4, Holscher Deposition at 43).  Mr. Holscher exclaimed: "You were in my way you dumb bitch."  (*Id.* at 17-18).   In her deposition, Plaintiff described the bumping incident as an intentional assault.  (Doc. 22-1

3

at 35-51).

Ms. Milner testified that Plaintiff became more agitated over the incident as the shift wore on.  Believing the bumping incident to have been intentional, Plaintiff requested that Mr. Holscher be "written up" or disciplined by Ms. Milner.  Although Postal Management investigated the incident on the morning of September 3, 2007, management declined to discipline either Mr. Holscher or Plaintiff after determining the incident was an accident. (Doc. 16-6 at 3).  As part of the investigation, all three parties (Holl, Holscher, and Milner) supplied written statements.   Ex. 2 at 23; Exh. 3 at 23.  Plaintiff's statement indicated her belief that the bump "was the rudest thing done to me" and that the incident occurred due to Holscher "being rude and pushy."  (Doc. 16-2 at 7).

Some hours after the incident, Plaintiff complained that she was in severe pain, and requested medical attention.  Ms. Milner transported Plaintiff to the local hospital.  Medical authorities ultimately determined that the incident aggravated a pre-existing arthritic condition in Plaintiff's neck.  Plaintiff did not return to work for a month, due to pain from the incident.  (Exh. 16-1 at 48-49).

### 3.   October 2007 Request for Accommodations (Zamudio)

After approximately one month, Plaintiff accepted a return to work under modified conditions that permitted her to remain seated while working.  Her physician subsequently prescribed the use of narcotic pain medication at work.  (Doc. 22-1 at 53-55).  Since Plaintiff was precluded from driving while taking the pain medication, she requested that her employer provide her with transportation to and from work.  She also requested rest breaks, per her physician's note, because the narcotic medication made her sleepy. However, Mr. Zamudio denied her requests.  (*Id.*).  Mr. Zamudio presented her with a form

to formally request accommodations, but Plaintiff did not further pursue the issue.  (Doc. 22-3, Zamudio Deposition at 12).  On October 5, 2007, Plaintiff stopped working because of her use of the narcotic medication.

She remained off of work for the remainder of 2007 through July 18, 2008, missing approximately 10 months of work in total.  The Officer of Workers Compensation Program denied her claim for pay benefits, but her medical costs were later reimbursed.

### 4. Fall 2008 contacts with Mr. Holscher

A few weeks after returning to work, on or about August 3-4, 2008, Plaintiff complained to a supervisor (Daniel Lynch) that she had seen Mr. Holscher in her work area.   However, another supervisor (Darrel Byrd) had instructed Holscher to retrieve a hand truck in the area, which reason Holscher explained to Plaintiff at the time.  (Doc. 16-1 at 62).

On November 1, 2008, Plaintiff alleges that Holscher "menaced her" by being in her work area and speaking for approximately two minutes to another employee, Dennis Ormond.   Plaintiff claimed that Holscher was staring at Plaintiff while speaking to Mr. Ormond.  Later, Holscher (who was walking ahead of Plaintiff) held a door open for her. (Doc. 16-1 at 63-64.)   Although Plaintiff complained of both incidents, management determined that no further action was warranted and that given Mr. Holscher's duties, which included driving equipment around the facility, separating the two employees was not feasible.  (Doc. 16-6 at ¶3).

### 5. Denial of FMLA Leave Request (October 2008)

Around the same time period, from October through November 2008, Plaintiff

suffered migraines and an eye infection and requested unscheduled leave at least three times, which was granted.  (Doc. 16-1 at 74-75).  Although she requested FMLA leave, that request was denied because she had not worked the requisite number of hours in the previous 12 months to qualify for FMLA leave.  Mr. Zamudio played no role in the denial of Plaintiff's request for FMLA leave.  (Doc. 16-3 at 28-29).

### B.  Administrative Claims Filed Before EEOC

Plaintiff filed two administrative complaints concerning the allegations in the complaint prior to filing the instant lawsuit. [3]

The first relevant EEO complaint was filed on August 23, 2007 and alleged discrimination based on race, sex and physical disability when Mr. Zamudio asked Plaintiff to move a house truck on March 31, 2007.  The same administrative proceeding alleged that Plaintiff's employer discriminated against her during the investigation and disciplinary proceedings concerning the September 3, 2007 bumping incident.  Because Plaintiff initiated the instant lawsuit while Plaintiff's administrative action remained pending, the administrative judge dismissed her first EEOC complaint pursuant to 29 C.F.R. §1614.107(a)(3).[4]

Plaintiff's second EEOC Complaint was filed on December 24, 2008 and alleged discrimination based on Plaintiff's age, gender, and race, as well as reprisal.  (Doc. 16-2

---

[3]Plaintiff asserts that she also filed an EEOC complaint in 1999 and that "management" was aware of that action.  However, there is no evidence in the record, other than a brief reference in Plaintiff's deposition testimony, to support the allegation that Plaintiff filed any EEOC complaint in 1999.  Even assuming the truth of that testimony, there is no evidence that any managerial employee (or anyone else) was aware of the 1999 EEOC complaint.  In fact, Plaintiff testified that she did not reference the 1999 EEOC complaint in her 2007 complaint.

[4]The dismissal order concerning the first EEOC complaint has not been included in the eletronic record here, but the basis for dismissal is not disputed.

at 35-36).  Plaintiff's second EEOC complaint also alleged that Plaintiff had been subjected to a hostile work environment due to "harassment" by Mr. Holscher, and that management had failed to remedy that harassment.  In the same complaint, Plaintiff alleged that she had been denied a reasonable accommodation, and that her request for FMLA leave also had been wrongfully denied.  (*Id.*).  On May 29, 2009, the EEOC issued a Final Agency Decision finding no discrimination.  (*Id.* at 28-46).

### C.  Plaintiff's Federal Complaint

Plaintiff's present complaint enumerates six separate "claims."  In her first claim, Plaintiff alleges that her supervisor required her to work outside her restrictions by asking her to push the house truck, in violation of the Rehabilitation Act.  (Doc. 1 at 5-7).  In her second claim, Plaintiff alleges that she was subjected to gender discrimination based upon management's failure to discipline Mr. Holscher for the bumping incident.  (*Id.* at 7).  In her third claim,[5] Plaintiff alleges that she was subjected to reverse race discrimination by Mr. Zamudio.  (*Id.* at 7-8).  In her fourth claim, Plaintiff alleges that the Defendant wrongfully interfered with her rights under the FMLA.  (*Id.* at 8).  In her fifth claim, she alleges that she was subjected to "retaliatory discrimination." (*Id*. at 9).  Similar to Claim 2, in her sixth claim Plaintiff alleges age discrimination based upon her employer's failure to discipline a "much younger" employee (Holscher) for the 2008 incidents.  In addition to the six numbered claims, Plaintiff's complaint has been construed by Defendant and this Court to allege a general claim of hostile work environment.

---

[5]The numerical order of Plaintiff's claims contains a typographical error, with two numbered "second claims." For its own convenience, the Court has described the claims as if correctly numbered.

7

## II.  Analysis

### A.  Defendant's Motion - Summary Judgment Standard of Review

In a motion for summary judgment, "a court must view the facts and any inferences that can be drawn from those facts ... in the light most favorable to the nonmoving party." *Keweenaw Bay Indian Comm. v. Rising,* 477 F.3d 881, 886 (6th Cir.2007) (internal quotation marks omitted).   "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed.R.Civ.P. 56(c)) (internal quotation marks omitted). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment-rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

The requirement that facts be construed in the light most favorable to the Plaintiff, however, does not mean that the court must find a factual dispute where record evidence contradicts Plaintiff's wholly unsupported allegations.  After a moving party has carried its initial burden of showing that no genuine issues of material fact remain in dispute, the burden shifts to the non-moving party to present specific facts demonstrating a genuine issue for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  "The 'mere possibility' of a factual dispute is not enough."  *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir.1992) (citing *Gregg v. Allen-Bradley Co.,* 801 F.2d 859, 863 (6th Cir.1986)). In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint.  *Anderson v. Liberty*

*Lobby, Inc.,* 477 U.S. 242, 249-50, 106 S.Ct. 2505 (1986). The non-moving party's evidence "is to be believed, and all *justifiable* inferences are to be drawn in his favor." *Id.* at 255 (emphasis added). The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Id.* at 251-52.

Although reasonable inferences must be drawn in favor of the opposing party, *see Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356, inferences are not to be drawn out of thin air. Rather, it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines,* 602 F. Supp. 1224, 1244-45 (E.D.Cal.1985), *aff'd,* 810 F.2d 898, 902 (9th Cir.1987). To demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"*Matsushita,* 475 U.S. at 587, 106 S.Ct. 1356 (citation omitted). It is the Plaintiff's burden to point out record evidence to support her claims. "[T]he Court has no duty when deciding a motion for summary judgment to scour the record for evidence that supports a plaintiff's claims." *Abdulsalaam v. Franklin County Bd. Of Com'rs,* 637 F. Supp.2d 561, 576 (S.D. Ohio 2009)(citing *Williamson v. Aetna Life Ins. Co.,* 481 F.3d 369, 379 (6th Cir. 2007)).

In this case, Plaintiff has failed to present anything more than her own conclusory allegations in support of her claims. Plaintiff's allegations fail to create any genuine issue of material fact because the most critical allegations are refuted by evidence filed of record.

Conclusory allegations, standing alone, are insufficient to demonstrate a genuine issue for trial.

### B. Plaintiff's Claims and Grounds for Defendant's Motion

As previously stated, Plaintiff includes six numbered "claims" in her complaint, all of which are addressed by Defendant in its pending motion for summary judgment. Defendant also addresses Plaintiff's unnumbered but generally alleged "hostile work environment" claim.

### 1. The Rehabilitation Act

Plaintiff's first claim is that the Defendant violated the provisions of the Rehabilitation Act when Plaintiff's supervisor required her to move a house truck in violation of her work restrictions.

Defendant argues that it is entitled to summary judgment because Plaintiff is not a "disabled individual" under the Rehabilitation Act, such that her claims under the Rehabilitation Act fail as a matter of law. A plaintiff seeking relief under the Rehabilitation Act must meet the "threshold burden of establishing that [she] is 'disabled' within the meaning of the [relevant] statute." *Roth v. Lutheran General Hospital*, 57 F.3d 1446, 1454 (7th Cir. 1995).[6]

> To be disabled for the ... Rehabilitation Act, an individual must (1) have a physical or mental impairment which substantially limits' him or her in at least one major life activity,(2) have a record of such an impairment, or (3) be regarded as having such an impairment. *Mahon v. Crowell,* 295 F.3d 585, 589 (6th Cir.2002). Major life activities include functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking,breathing, learning, and working. *Id.* at 590 (quoting 45 C.F.R. §

---

[6]Although *Roth* involved both the Rehabilitation Act and the Americans with Disabilities Act (ADA), both statutes define the term "disabled" in the same way.

84.3(j)(2)(ii)).

*DiCarlo v. Potter,* 358 F.3d 408, 418 (6th Cir. 2004)

Although Plaintiff has a record of physical restrictions, that evidence does not mean that Plaintiff is "disabled" within the context of federal disability laws absent evidence that she is substantially limited in a major life activity.  Multiple courts have held that an individual who has not established that she is disabled is not entitled to accommodations under the RA.  *Id.; see also Spence v. Potter*, 1:07-cv-526-SES, 2010 WL 518179 *8-9 (S.D. Ohio, February 3, 2010).

While Plaintiff has restrictions on lifting, carrying, pushing/pulling, bending/stooping and twisting/reaching, those limitations do not constitute a disability absent evidence that Plaintiff is limited in one or more of her major life activities by those restrictions.  *See, e.g., McKay v. Toyota Motor Mfg., U.S.A., Inc.*, 110 F.3d 369 (6th Cir. 1997)(repetitive motion restrictions not disabling); *Williams v. Channel Master Satellite Systems, Inc.*, 101 F.3d 346, 348 (4th Cir. 1996)(lifting restriction not disabling), abrogated on other grounds by *Baird v. Rose*, 192 F.3d 462, 469 n. 8 (4th Cir. 1999); *Manning v. Potter*, 2006 WL 2710660 (N.D. Ill. Sept. 15, 2006)(restrictions on standing, lifting and carrying, among others, failed to demonstrate disability); *Darwin v. Principi*, 2006 WL 5079473 (M.D. Fla June 15, 2006)(hearing loss and limitations from back injury not disabling).  Plaintiff has failed to present any evidence that she is limited in a major life activity.  Knowing that an individual has health problems or some physical limitations is not the same as being aware that a plaintiff is a disabled individual within the meaning of the Rehabilitation Act.  *Brown v. BKW Drywall Supply Co.*, 305 F. Supp.2d 814, 829 (S.D. Ohio 2004).

11

Plaintiff argues in her responsive memorandum that Mr. Zamudio, her supervisor, regarded her as "disabled."  (Doc. 22 at 3-4).  However, the deposition reference cited by Plaintiff, "Zamudio Depo., p. 10," does not support her assertion.

Zamudio's deposition is filed as exhibit 3 to Plaintiff's response.  Page 10 of the deposition transcript contains Mr. Zamudio's recounting of the March 2007 House Truck Incident, wherein he testified that Plaintiff told him to "never mind" her initial objection to moving the truck, and proceeded to push the truck as he had requested:

Q. Was she having any difficulty doing that?

A. Not at all.
......
Q.  Have you had other instances where you had asked her to do that job?

A.  I cannot recall the exact incident, but I'm sure I have.  I don't directly instruct employees to do things unless something needs to be done the right way and I don't see or find and [sic] supervisor, you know, in sight.  And my job as a manager is to instruct the supervisors to get the work done if I don't see it done.

(Doc. 22-3 at 10).  In other words, nothing on page 10 of Mr. Zamudio's deposition supports Plaintiff's argument that he regarded her as disabled; if anything, the cited testimony supports the opposite conclusion.

"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may...consider the fact undisputed for purposes of the motion."  Rule 56 (e)(2), Fed. R. Civ. P.  As Defendant notes, in her own deposition Plaintiff testified that she was unaware if anyone had ever determined that she was disabled (Doc. 22-1 at 23-24).

Based upon the failure of Plaintiff to satisfy the "threshold issue" that she is a disabled individual under the Rehabilitation Act, the Defendant is entitled to summary

12

judgment on Plaintiff's first claim.

### 2.  Three Claims Concerning Mr. Holscher

Two numbered claims and a third unnumbered claim all rest on alleged conduct by Plaintiff's co-worker, Mr. Holscher, that occurred in 2007 and 2008: (1) Plaintiff's claim for gender discrimination (numbered as "Second Claim"); (2) Plaintiff's claim for age discrimination (technically Plaintiff's sixth claim),[7] and (3) a vaguely articulated claim for "hostile work environment."  Defendant argues that it is entitled to summary judgment on all three claims, because none of the alleged conduct by Mr. Holscher is sufficient as a matter of law to prove any type of discrimination or hostile work environment claim, and the 2008 incidents in particular involving Mr. Holscher were so "trivial" that Defendant's failure to discipline Mr. Holscher cannot support any claim as a matter of law, regardless of the legal basis.

I agree that Defendant is entitled to summary judgment on claims involving conduct by Mr. Holscher, because Plaintiff has failed to prove a *prima facie* case under any discrimination or hostile work environment theory.   In none of the incidents does Plaintiff provide any evidence - either implicit or explicit- that Mr. Holscher's interactions were motivated by Plaintiff's age, gender, race, or prior protected activity.   Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at "discriminat[ion]...because of" protected characteristics.  *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 76, 80-81 (1998).

The most egregious of the conduct complained of by Plaintiff was the 2007 bumping

---

[7]Misnumbered by Plaintiff as her "fifth claim."

incident.  Although Plaintiff likens the 2007 bumping incident to an intentional tort, she offers no evidence that her co-worker deliberately assaulted her, much less that his assault was motivated by or based on Plaintiff's age, gender, or race.  In a written statement at the time of the incident, Plaintiff stated that Mr. Holscher knocked her arm when he "walked" into her.  (Doc. 16-2 at 7).  Acting Supervisor Katherine Milner also testified that the bumping incident occurred when Mr. Holscher walked past Plaintiff.  Although Plaintiff argues that the failure to discipline Holscher was a violation of Defendant's "Zero Tolerance Workplace Policy," Plaintiff has not demonstrated that the bumping incident should have been considered workplace violence, rather than accidental contact as determined by the Defendant  following its investigation.  (*See* Docs. 16-6, 16-7).

At the conclusion of the bumping incident Mr. Holscher called Plaintiff a "dumb bitch" in response to her blocking his path. Again however, there is no evidence that Holscher's comment (any more than the "bump") was motivated by any race-based animus.  While the use of such a derogatory insult is both uncivil and gender-specific, the use of a single isolated remark is not severe or pervasive, and the context on the facts presented here does not suggest that the remark was invited by gender-based discrimination as opposed to mere personal animus. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)("mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee" would not affect the conditions of employment to a sufficient degree to violate Title VII)(additional citation omitted).  "For sexual harassment to be actionable, it must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Id.*

In addition to the 2007 bumping incident, Plaintiff complains of three additional

14

interactions with Mr. Holscher in 2008, the first of which occurred eleven months after the bumping incident: 1) Mr. Holscher coming into Plaintiff's work area to retrieve a piece of equipment; 2) Mr. Holscher engaging in conversation with a co-worker while allegedly staring at Plaintiff; and 3) Mr. Holscher holding the door open for Plaintiff when she was walking behind him.   None of these events, either separately or in combination, supports a claim of discrimination or of a hostile work environment.

To prove a *prima facie* case of hostile work environment, a plaintiff must establish the following: 1) she was a member of a protected class; 2) she was subjected to unwelcome harassment; 3) the harassment was based on her protected characteristics; 4) the harassment unreasonably interfered with her work performance by creating an intimidating, hostile, or offensive work environment; and 5) the employer is liable.  *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 515 (6th Cir. 2009)(citing *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999)).  Failure to establish a *prima facie* case is grounds to grant the defendant summary judgment.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989).

Mr. Holscher's action in following the August 2008 directive of a supervisor to retrieve equipment does not amount to gender or age-based harassment.  Likewise, I conclude that the act of a co-worker staring at Plaintiff on a single occasion is objectively insufficient to support a claim of hostile work environment, at least on the facts presented here.  *Accord Bishop v Ohio Dept. Of Rehabilitation and Corrections*, 695 F. Supp.2d 707 (S.D. Ohio 2010)(sporadic or irregular acts less likely to constitute hostile work environment); *contrast Henderson v. Whirlpool Corp.*, 17 F. Supp.2d 1238, 1243-44 (N.D.

Okla. 1998)(repeated "threatening stares" related to complaints about sexual harassment my constitute illegal harassment when viewed in context).  The third 2008 incident - in which Mr. Holscher held a door for her - is equally unhelpful as proof of any discriminatory animus.  Plaintiff herself testified that he was attempting to be nice to her, notwithstanding her subjective view of the action as intimidating.  (Doc. 22-1 at 64).

The Sixth Circuit has held in other cases that far more egregious conduct does not create a hostile work environment, even when there is evidence (unlike here) that the conduct was motivated by some discriminatory animus.  *See, e.g, Bowman v. Shawnee State University*, 220 F.3d 456, 459 (6th Cir. 2000)(female university dean rubbed shoulder of male instructor on one occasion, and on another occasion grabbed his buttocks and said "I control [your] ass."); *Stacy v. Shoney's Inc.*, 142 F.3d 436 (Table, text available at 1998 WL 165139)(6th Cir. 1998)(summary judgment affirmed even though male supervisor continuously made sexually suggestive comments over two month period and touched female employee's breast on one occasion)

Plaintiff argues that because the 2007 incident involved physical contact, such contact - combined with the 2008 incidents - is sufficient to state a hostile work environment claim, relying on *Nat'l RR Passenger Corp. v. Morgan*, 536 U.S. 101, (2002).  However, the primary issue decided in *Morgan* - how to calculate the timeliness of a claim - is simply not at issue in this case.  In *Morgan*, the Supreme Court held that an employee could recover on a hostile work environment theory for acts occurring more than 300 days before the employee filed his EEOC charge, as long as the acts were part of the same hostile work environment and at least one occurred within the relevant time period.

16

*Morgan* provides no support for Plaintiff's argument that a single instance of accidental physical conduct can state a hostile work environment claim - to the contrary, the Supreme Court emphasized that by definition, a hostile work environment claim involves repeated conduct that may occur over days or years.

The Defendant has made no *Morgan*-like argument that Plaintiff somehow failed to timely exhaust her claims concerning Mr. Holscher.  The only argument presented by Defendant relating to timeliness is an argument that Plaintiff failed to timely present her September or October 2007 requests for accommodations, and has never alleged that the denial of those requests were in any way related to her hostile work environment claim involving Mr. Holscher.

In sum, both the bumping incident in 2007 and Mr. Holscher's actions in 2008- while perhaps rude- were not discriminatory or otherwise legally improper.  Because the conduct concerning Mr. Holscher at most reflects some personal animus and not discrimination based on Plaintiff's age, race, or gender, the Defendant cannot be held liable under Title VII for failing to discipline him.   "The law does not require employers to make perfect decisions, nor forbid them from making decisions that others may disagree with."  *Hartsel v. Keys*, 81 F.3d 795, 801 (6th Cir. 1996).  The court's role "is to prevent unlawful ... practices, not to act as a 'super personnel department' that second guesses employers' business judgments."  *See Hedrick v. Western Reserve Care System*, 355 F.3d 444, 462 (6th Cir. 2004), *quoting Simms v. Okla. ex rel. Dept. of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1330 (10th Cir. 1999)(additional citation omitted).

In addition, Plaintiff's supervisors, Messrs. Dawson and Lynch, both stated that they

17

had no knowledge of Plaintiff's 2007 EEOC action concerning Mr. Holscher at any time relevant to their actions concerning the Plaintiff. (Docs. 16-6, 16-7). Aside from the Court's conclusion that Mr. Holscher's conduct itself was not discriminatory and did not violate Title VII, absent some evidence that a decision-maker was aware of Plaintiff's protected activity at the time of the alleged adverse employment action, the employer's action in failing to discipline Mr. Holscher cannot have been retaliatory.

### 4. Claims Based Upon Plaintiff's 2007 Requests for Accommodations (Third and Sixth Claims)

After the September 2007 bumping incident, Plaintiff accepted a return to work with accommodations. Subsequently, when her physician prescribed narcotic medication, Plaintiff requested additional accommodations, including transportation between her workplace and her home, and rest breaks so that she could sleep during her shift. Mr. Zamudio determined that the additional accommodations were unreasonable and denied Plaintiff's request.

Plaintiff argues that Zamudio's denial of her request without submitting it to the medical department or Human Resources constituted reverse race discrimination (third claim) and/or retaliatory discrimination (sixth claim), because Mr. Zamudio is Hispanic whereas Plaintiff is Caucasian.

Defendant seeks summary judgment on multiple grounds. First, Defendant argues that Plaintiff is not entitled to any accommodations because she has not proven that she is a disabled individual, as discussed above. Even if Plaintiff could have been considered as disabled for a brief period, Plaintiff does not dispute that she no longer required narcotic medication by the time she returned to work in July 2008.

18

Second, Defendant points out that the record reflects that Plaintiff was asked to sign a formal request for accommodations but she refused to do so. ((Doc. 22-3, Zamudio Deposition at 12). Having failed to comply with the process required to formally request accommodations, Plaintiff cannot show that Mr. Zamudio acted improperly. In addition, Plaintiff's informal requests cannot be considered to be legally "reasonable." Plaintiff has not demonstrated that either transportation to and from her home or sleeping on the job were required to permit Plaintiff to perform an essential function of her job or that she would be otherwise qualified to perform the position even with mandated rest breaks.

Third, Defendant persuasively argues that Plaintiff waived any claim for discrimination based upon the October 2007 denial of her request for accommodations by failing to exhaust that claim administratively. Plaintiff does not dispute that she failed to raise her request for accommodations in either of her two EEOC complaints, thereby failing to exhaust any claim regarding that request.

While it is not entirely clear, in her deposition Plaintiff suggested that she was including in her "accommodations" claim allegations concerning her employer's failure to separate her from Mr. Holscher by moving him out of her work area. To the extent her claim could be so construed, however, the Defendant would be entitled to summary judgement because a request to move her co-worker was related only to her interpersonal conflict with Mr. Holscher, and not to any alleged impairment.

### 5. FMLA Claim (Fourth Claim)

The Defendant is also entitled to judgment as a matter of law on Plaintiff's fourth claim, that the Defendant wrongfully interfered with her rights under the FMLA. Plaintiff cannot prove interference with her right to claim FMLA leave, because the Defendant has

offered unrebutted evidence that Mr. Zamudio played no role in denying Plaintiff FMLA leave.  (Doc. 16-2, Zamudio Deposition at 28-29).  Rather, the determination that Plaintiff was not entitled to claim FMLA leave based upon her lack of sufficient consecutive work days was made by the FMLA coordinator, who had no knowledge of Plaintiff's prior EEOC activity.  In fact, Plaintiff does not dispute that she did not have sufficient hours to claim entitlement to FMLA leave.

In her response in opposition, Plaintiff argues that Mr. Zamudio interfered with her FMLA rights by denying her request for reasonable accommodations in October 2007, which in turn "led to Ms. Holl being off work for approximately ten months" and ultimately caused Ms. Holl to lose her eligibility for FMLA leave due to insufficient work hours.  Such a tenuous causal relationship simply is not the kind of "interference" that would sustain an FMLA claim.  Aside from Plaintiff's failure to exhaust any claim based on the denial of accommodations in 2007, as well as her failure to offer any proof that such denial was based upon a protected characteristic, it is unimaginable that Mr. Zamudio deliberately denied Plaintiff's request for disability accommodations in October 2007 with the intention of interfering with Plaintiff's future request for FMLA leave nearly a year later.

Similarly, Plaintiff cannot make out a claim that her employer retaliated against her as a result of her use of FMLA leave.  In fact, Plaintiff does not even allege that her employer took any adverse action against her after denying her request for such leave.

### 6. Third and Fifth Claims Regarding Mr. Zamudio (Race-based Disparate Treatment)

As mentioned, Plaintiff's third claim is that she was subjected to reverse race discrimination by Mr. Zamudio; her fifth claim generally alleges retaliation based upon prior

EEOC activity. I have previously discussed the third claim insofar as it relates to Plaintiff's October 2008 request for additional accommodations. However, Defendant persuasively argues that it is entitled to summary judgment to the extent that either of Plaintiff's race discrimination or retaliation claims rest on allegations of disparate treatment; namely, that Mr. Zamudio did not require non-Caucasian employees to work outside their physical limitations as he did in March 2007 when he asked Plaintiff to move the house truck.

To establish a *prima facie* case of race discrimination, a plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she was qualified for her job; (3) she suffered an adverse employment decision; and (4) she was treated differently than similarly situated non-protected employees. *See White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008)(setting forth familiar *McDonnell Douglas* framework, additional citations omitted). A plaintiff who is unable to identify similarly-situated individuals outside of the relevant protected group who were treated more favorably may still establish a *prima facie* case, so long as he or she can demonstrate that the adverse action was based on "discriminatory criterion" such as race, and "additional evidence" exists that indicates discriminatory intent in "light of common experience." *Lindsay v. Yates*, 578 F.3d 407, 418 (6th Cir. 2009)(citations omitted).

On the facts presented, Plaintiff has not come close to even alleging a *prima facie* case of discriminatory treatment based upon her race. Plaintiff's claim of reverse race-based discrimination is undercut by her own deposition, wherein she testified that Mr. Zamudio asked an African-American woman, Thelma Butler, to work outside her restrictions. (Doc. 22-1 at 28-29). However, Ms. Butler did not comply when Mr.

Zamudio's superior stepped in to countermand the request.  (*Id.*).  In other words, Plaintiff testified that she and Ms. Butler were both asked to work outside their physical limitations by Mr. Zamudio.  There is no evidence that his request that Plaintiff move the house truck was motivated in any way by Plaintiff's race, or that the request resulted in an adverse action. *See Hollins v. Atlantic Co., Inc.* 188 F.3d 652, 662 (6th Cir. 1999)(defining materially adverse employment action).

Likewise, although Plaintiff alleges generally that she was the victim of retaliatory conduct perpetrated by Messrs. Zamudio, Dawson, and Lynch, none of the alleged acts that occurred after the house truck incident supports a *prima facie* case of retaliation.  In her response in opposition to Defendant's motion, Plaintiff argues that she has proven retaliation based upon Zamudio's failure to discipline Holscher, as well as Zamudio's denial of her request for accommodations in October 2008.

It is not entirely clear what protected conduct of Plaintiff's that Mr. Zamudio is alleged to have retaliated against, or what adverse employment action is alleged to have been taken by Mr. Zamudio or any other supervisor.  As discussed, the March 2007 house truck incident was the first incident that occurred between Mr. Zamudio and Plaintiff.  That incident was not race-based or in retaliation for any EEOC protected activity, because no administrative complaint had yet been filed.

To the extent that Plaintiff is claiming that Mr. Zamudio's failure to discipline Mr. Holscher was retaliatory, the claim is also difficult to conceive.  The 2007 bumping incident with Mr. Holscher occurred at a time when Mr. Zamudio was on vacation.  Being on vacation, Mr. Zamudio played no role in the investigation that determined that incident to have been an accident.  Because he played no role in investigating the accident, Mr.

22

Zamudio's failure to discipline Mr. Holscher could not have been retaliatory.  In fact, Mr. Zamudio was unaware of Plaintiff's EEOC complaint concerning the bumping incident until he was requested to supply an affidavit on December 8, 2007 during the course of the EEOC investigation, three months after the incident.  (Doc. 16-3 at 20-21).

Similarly, the failure of Messrs. Dawson and Lynch to discipline Mr. Holscher could not have been retaliatory because they were unaware of Plaintiff's prior EEOC activity.  (*See* Docs. 16-5, 16-6).  "To establish actionable retaliation, the relevant decision maker... must possess knowledge of the plaintiff's protected activity."  *Escher v. BWXT Y-12, LLC*, 627 F.3d 1020, 1026 (6th Cir. 2010)(citing *Mullhall v. Ashcraft*, 287 F.3d 543, 551-52 (6th Cir. 2002)).

To the extent that Plaintiff is alleging that her protected activity was filing a 2007 EEO complaint concerning the bumping incident, and that the retaliatory action was Mr. Zamudio's October 2008 denial of her request for additional accommodations of transportation to/from work and rest periods, Plaintiff has failed to offer any evidence of a causal connection between the filing of the EEO complaint and the denial of accommodations, even if the latter could be viewed as an adverse employment action.  The lapse of more than a year diminishes the likelihood of causation based on any temporal connection.  *Clark County School Dist. v. Breeden*, 532 U.S. 268, 273-274 (2001)(noting that use of temporal proximity between an employer's knowledge of protected activity and adverse employment action sufficient to establish causality must be "very close," and that span of 20 months suggests no causality at all).

Plaintiff notes that she had prior EEOC activity involving the Postal Service in 1999, and that management was aware of that activity.  However, to the extent that more than

a year's time greatly diminishes the likelihood of retaliatory conduct, the lapse of nearly a decade clearly eliminates that possibility.

### 7. Failure to Prove *Prima Facie* Discrimination Claims

I have previously discussed why Defendant is entitled to summary judgment on the basis of Plaintiff's hostile work environment and reverse race discrimination claims, and have touched on the deficiencies of Plaintiff's age and gender discrimination claims in the course of discussing the ways in which Plaintiff's allegations against Mr. Holscher fall short of proving those claims. Although it is unnecessary to reach all of Defendant's alternative arguments in favor of summary judgment, I will briefly touch upon several additional reasons for awarding Defendant summary judgment.

### a. Age Discrimination

The Age Discrimination in Employment Act ("ADEA") prohibits discrimination in employment on the basis of age. To establish her *prima facie* case under the Age Discrimination in Employment Act ("ADEA") Plaintiff must show at a minimum that: 1) she is over the age of forty; and that 2) she was subjected to an adverse employment action; and 3) she treated more adversely than a similarly situated employee not in the protected class, because of her age. *LaPointe v. United Auto Workers Local 600*, 8 F.3d 376, 379 (6th Cir. 1993); *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 311-312 (1996).

"[T]he plaintiff retains the burden of persuasion to establish that age was the 'but-for' cause of the employer's adverse action." *Gross v. FBL Financial Services, Inc.*, 129 S.Ct. 2343, 2351 (2009). A plaintiff may carry this burden by presenting either direct or

24

circumstantial evidence. However, direct evidence is infrequently available. "[C]ourts have found only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age, to constitute direct evidence of discrimination." *See Carter v. Miami*, 870 F.2d 578, 582 & n.10 (11th Cir. 1989)(collecting cases). To the extent an ADEA plaintiff relies upon the framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973), unlike in other employment discrimination cases, the burden of proof for a direct evidence case does not shift to the defendant merely because a plaintiff has demonstrated that his or her age was "one factor" in the employer's adverse employment decision. *See Geiger v. Tower Automotive,* 579 F.3d 614, 621 (6th Cir. 2009)(acknowledging impact of *Gross v. FBL Financial Services, Inc.*, 129 S.Ct. 2343 (2009) on prior burden-shifting case law).

Notwithstanding the Supreme Court's statement that it has "not definitively decided" whether use of the *McDonnell Douglas* framework is "appropriate in the ADEA context," *see Gross*, 129 S.Ct. at 2349 n.2, Sixth Circuit precedent confirms its continuing application in this circuit for cases involving indirect or circumstantial evidence. *See Geiger v. Tower Automotive*, 579 F.3d at 622. Only if a plaintiff establishes a *prima facie* case through circumstantial evidence does the burden of production pass to the defendant to articulate a legitimate nondiscriminatory reason for its employment action. *Simpson v. Midland-Ross Corp,* 823 F.2d 937, 940 (6th Cir. 1987). If such a reason is proffered, the employee bears the burden of showing that it is not the true reason but instead was a pretext for discrimination. *Imwalle v. Reliance Medical Products, Inc.,* 515 F.3d 531, 544 (6th Cir. 2008). Of course, regardless of the reasons offered by the employer, a plaintiff's

25

failure to show that age was the "but-for" cause of the adverse employment action against him will always defeat his claim.  *See Geiger*, 579 F.3d at 625 (because plaintiff failed to present evidence that the decision-maker refused to hire him based on age, he could not establish that the preference for the younger candidate was discriminatory).

In this case, Plaintiff offers virtually *no* evidence  of age discrimination - either direct or indirect.  The sole piece of evidence offered is that Plaintiff was over 40 years of age at the time that Mr. Zamudio asked her to push the house truck, and that she was "substantially older" than Mr. Holscher.  (Doc. 22 at 12).  However, proof of a party's age, standing alone, is simply not sufficient to prove a *prima facie* case of discrimination.

.    **b.    Gender Discrimination**

Plaintiff's claim of gender discrimination is equally conclusory and devoid of factual support.  She claims that Zamudio failed to discipline a male employee (Holscher), "despite a number of threatening and harassing incidents." There is no evidence that the underlying incidents of which Plaintiff complains related to Plaintiff's gender, or that Zamudio acted against her in any manner as a result of her gender.

**III. Conclusion and Recommendation**

For the reasons stated herein, **IT IS RECOMMENDED THAT** Defendant's motion for summary judgment (Doc. 16) be **GRANTED**, and that this case be closed and stricken from the active docket.

 *s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

SHARON HOLL,                                  Case No. 1:09-cv-618

      Plaintiff,                              Weber, J.
                                              Bowman, M.J.

 v.

JOHN E. POTTER, Postmaster General,
United States Postal Service,

      Defendant.

.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

27